20723

In the Matter of William Hanon GLICKMAN, Respondent.
(246 S. E. (2d) 174)

168

*Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. A. Camden Lewis, Richard B. Kale, Jr., George C. Beighley* and *Perry M. Buckner,* Columbia, *for complainant.*

*Kermit S. King,* of *King & Furr,* Columbia, *for respondent.*

July 17, 1978.

*Per Curiam:*

This disciplinary matter was commenced by the service on the Respondent of a Complaint charging him with numerous acts of professional misconduct. The acts complained of involve basically financial defalcations in transactions with both clients and third parties. The Complaint alleges that these acts pollute the administration of justice and bring the courts or legal profession into disrepute, all being violative of the Code of Professional Responsibility.[1] Both the Hearing Panel and the Executive Committee of the Board of Commissioners on Grievances and Discipline have found the facts to be substantially in accord with the allegations of the Complaint and have recommended disbarment, with which findings and recommendation we are in agreement.

Respondent was admitted to the practice of law in South Carolina in 1970. He is a resident of Greenville County and thirty-two years of age. Formerly associated with a law firm

---

[1] Rule 32, Rules of Practice of the Supreme Court.

in Greenville, he has been practicing alone in Greenville since 1974 with the exception of a short period during which he had an associate.

Respondent never filed an Answer to the Complaint, but he did appear with his attorney at the Panel Hearing. At this Hearing substantially all of the alleged facts were stipulated to by Respondent and his attorney. The only witnesses offered by Respondent were himself and his wife. The Respondent filed no exceptions to the Report of the Panel nor did he appear upon its review by the Executive Committee.

There are five transactions involving instances in which the Respondent, while serving as the closing attorney in purchase-mortgage loans, was entrusted by the lending institutions with the loan proceeds from which Respondent was to pay off existing mortgages. The interval between receipt of funds by Respondent and disbursement by him for the intended purpose ranged, in the four matters in which payment was finally made by Respondent, from 46 days in the shortest period to 69 days in the longest period, payment never being made by Respondent in the fifth matter. The sums entrusted by the lenders to Respondent in each of these five transactions ranged from a low of $24,300 to a high of $41,200. No sufficient reason was shown for the delay in any of these matters. These acts are violative of Disciplinary Rule 6-101 (A) (3).

In three of the above transactions the Respondent certified to the respective lenders that its mortgage was the first lien on the subject property when in fact he knew that here was a prior existing mortgage or mortgages which he had failed to discharge. The issuance of these title certificates, combined with failure to discharge the existing prior mortgages at or immediately after the closing, constituted misrepresentations of fact with respect to prior existing mortgages in violation of DRI-102 (A) (3). Assuming that there was a practice and requirement for the closing attorney to submit such a cer-

tificate without exception with respect to existing mortgage liens at the time of the closing, as Respondent testified, the certificate would be understood to mean that there are no such liens other than liens which will be paid immediately, and Respondent failed to cause such liens to be discharged in these matters either immediately or within a reasonable time.

In one of the loan transactions (identified as the Young matter), Respondent not only failed to pay off from the loan proceeds two prior existing mortgages, but also failed to either maintain or account for the funds. These funds were used by the Respondent for his personal and business use. The ultimate result was that Lawyer's Title Insurance Corporation was required to pay off the prior mortgages and obtained judgment against Respondent for $40,648.14, which has not yet been paid. This illegal and dishonest conduct constitutes a violation of both DR9-102(B)(3) and DRI-102(A)(3) and (4).

Another case of misconduct, somewhat dissimilar to those listed above, involved a property settlement incident to a divorce suit in which Respondent was paid $9,706.44 by another attorney for delivery to Respondent's client, Joan M. Barkley. Respondent cashed the check, used the funds for his personal use, and no part has ever been paid to his client. This misconduct constitutes a violation of DR9-102(A)(2) and (B)(3) and (4) and DRI-102(A)(3) and (4).

Respondent, during the period in question, continually expended monies for his personal use from his account in Southern Bank & Trust Company, designated as "William H. Glickman, Attorney at Law", in which account he deposited funds of his clients and other trust funds, failed to account for such monies, and failed to maintain such monies for his clients. The balance in the account at the end of September 1976, at a point in time when none of the existing mortgages hereinabove mentioned had been paid off, although the loan proceeds for that purpose in each instance

had been received and deposited, was $3,272.05. However, it should be stated that, at the time this matter was heard, the record reflects that the only debts involved in this proceeding that remain unpaid are $40,648.14 to Lawyer's Title Insurance Corporation and $9,706.44 to Joan M. Barkley.

The Respondent testified that the acts of misconduct herein recited were precipitated by a combination of circumstances including embarking on an unsuccessful business venture, family illness, and personal emotional problems. As we said in the case of *In re Lake*, S. C., 236 S. E. (2d) 812, 813, "We cannot allow misappropriation of clients' funds, however understandable the financial pressures are that prompted the misappropriation."

The acts of misconduct in this case, taken separately, are serious enough. Viewed as a whole, they are grave indeed. Trustworthiness forms the very heart of a law practice. Whenever it is found lacking, not only is the public defrauded but the image of all members of the Bar is tarnished. We find no justification in this record for imposition of less than the maximum sanction.

It is ordered that the Respondent, William H. Glickman, be, and he hereby is, permanently disbarred from the practice of law in this State. He is directed to return his Certificate of Admission to the Bar to the Clerk of this Court within five (5) days from the notice of the filing of this order.